## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

**SKY TOXICOLOGY, LTD., SKY TOXICOLOGY LAB MANAGEMENT, LLC, FRONTIER TOXICOLOGY, LTD., FT LAB MANAGEMENT, LLC, HILL COUNTRY TOXICOLOGY, LTD., ECLIPSE TOXICOLOGY, LTD., ECLIPSE LAB MANAGEMENT, LLC, AND AXIS DIAGNOSTICS, INC.**

       **Plaintiffs, Counterclaim-Defendants,**

**vs.**

**Case No. 5:16-cv-1094**

**ORAL HEARING REQUESTED**

**UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF TEXAS, INC., UNITEDHEALTHCARE OF FLORIDA, INC., AND UNITEDHEALTHCARE SERVICES, INC.,**

       **Defendants, Counterclaim-Plaintiffs**

_____

## PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANTS PURSUANT TO F.R.C.P. 12(b)(1), 12(b)(6), AND 12(b)(7)

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), Plaintiffs Sky Toxicology, Ltd., Sky Toxicology Lab Management, LLC, Frontier Toxicology, Ltd., FT Lab Management, LLC, Hill Country Toxicology, Ltd., Eclipse Toxicology, Ltd., Eclipse Lab Management, LLC, and Axis Diagnostics, Inc. ("Plaintiffs" or "Labs") submit their Motion to Dismiss the Counterclaims brought by United Healthcare Insurance Company, Inc., United Healthcare of Texas, Inc., United Healthcare of Florida, Inc., and United Healthcare Services, Inc., (collectively "Defendants" or "United") and show this Court as follows:

## PREAMBLE

Here, United, a health insurance company, seeks to renege on payments it made for medical testing services the Labs provided to United's patient beneficiaries several years ago. After paying the Labs for their services, and after the Labs performed thousands of services for which they have not yet been compensated, United seeks to coerce the Labs into footing the entire bill for all services, so that United may shirk its primary obligation to fund medical services for its beneficiaries. United's Counterclaims are a desperate play to resurrect claims that were brought by United but dismissed by the United States District Court for the Southern District of Florida in 2016.  Despite alleging damages as an EIRSA claims administrator, United improperly attempts to recover the same "pot" of money under both ERISA and state law.

Realistically, United can do neither – and even though the court "must take the allegations as true, no matter how skeptical the court may be," *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009), United's claims fail.  Because United seeks to recover monies it paid as an ERISA-governed plan claims administrator, it cannot concurrently lay claim to the same damages as a non-fiduciary.  United's state law claims either (1) must be dismissed under conflict preemption principles; or (2) must be re-characterized and converted to claims under ERISA. Additionally, United's claims should be dismissed because: (1) United lacks standing to bring its claims; (2) United has failed to join indispensable parties; and (3) and its allegations fail to meet the rigorous pleading standards of FRCP Rule 9.

## FACTUAL BACKGROUND

United is a health insurance company that either directly insures or administers ERISA employee health and welfare benefit plans.  "[United] frequently serves as the claims administrator for ERISA plans that it issues or for which [United] provides administrative

services….” Counterclaims at ¶ 30. “Such ERISA plans typically grant [United] discretion in determining whether and to what extent claims are covered under such plans.” *Id*. “Insofar as [United] is exercising that discretion, [United] is acting as an ERISA claims-review fiduciary….” *Id*.

United provides administrative services for both Self-Funded Plans and Fully-Insured Plans. *Id.* at ¶ 31. Self-Funded Plans are funded by their respective sponsor, usually an employer, and for these plans United provides administrative services only. *Id.* at ¶ 32. Fully-Insured Plans are funded by United, and for these plans United issues insurance policies and provides administrative services. *Id.* at ¶ 34; Complaint at ¶ 31. “[A]ll of United’s plans function in accordance with plan documents, which establish, among other things, the rights and responsibilities of both the plan and the members of the plan.” Complaint at ¶ 32. United’s plans allow members the flexibility to choose to obtain healthcare services from either network providers or out-of-network providers. Counterclaims at ¶ 38. The Labs are all out-of-network providers. Counterclaims at ¶ 49.

The Labs are secondary providers, diagnostic laboratories that provide clinical toxicology testing on urine samples. The Labs do not directly interface with any of United’s plan members. Instead, it is the physicians and/or healthcare providers that provide medical care and assistance to United’s plan members and those first-line providers who determine if, when, and to what extent urinalysis or any other testing is medically necessary. These primary providers send samples to the Labs for testing. United’s plan members never directly communicate with the Labs prior to the tests being conducted on their urine samples.

Years after paying for the toxicology testing admittedly provided by the Labs to United’s plan members, United seeks to recoup approximately $56 million in monies paid to the Labs, for

*every single claim paid to Sky and other Lab Defendants over the course of five (5) years.* United's overreaching Answer & Counterclaims speculate that because of Sky's ownership model, referring physicians and facilities must have ordered medically unnecessary urinalysis tests to be conducted by all of the Labs and that the Labs must have "systematically and routinely" waived patient responsibilities to inflate payments from United for these claims. United's Counterclaims are based upon conclusory allegations, and represent a failure by United to set forth one plausible argument or any factual contentions to support a claim for fraud. The Labs dispute United's meritless claims, which must fail as a matter of law.

## STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). When there is a question of standing, it implicates a court's subject matter jurisdiction and the court should therefore apply the standards to a motion to dismiss under F.R.C.P. 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). A motion to dismiss under F.R.C.P. 12(b)(1) should be granted for lack of subject matter jurisdiction when the court does not have the statutory or constitutional power to adjudicate the claim. *Home Builders Assoc., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

F.R.C.P. 12(b)(7) allows the Court to dismiss the counterclaims for failure to join a necessary party pursuant to F.R.C.P. 19. To dismiss under F.R.C.P. 12(b)(7), the Court must decide if the absent party is a necessary party. F.R.C.P. 19(a). "[I]f the absent party is a necessary party, but its joinder is not feasible, the court must decide whether the absent party is

an 'indispensable' party to the action under Rule 19(b)." *Buck Kreihs Co. v. Ace Fire Underwriters Ins. Co.*, 2004 U.S. Dist. LEXIS 12442, *12 (E.D. La. June 29, 2004).

## ARGUMENT

ERISA governs "any employee benefit plan if it is established or maintained (a) by any employer engaged in commerce or in any industry or activity affecting commerce; or (b) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (c) by both." 29 U.S.C. § 1003(a). Congress' goal in drafting ERISA was to provide an exclusive federal enclave for the regulation of benefit plans. *See Memorial Hospital System v. Northbrook Life Insurance Company, et al.*, 904 F.2d 236, 244 (5th Cir. 1990).

There are two types of preemption arising under ERISA – complete preemption and conflict preemption. Complete preemption arises under 29 U.S. §1132 (ERISA § 502) and derives from ERISA's comprehensive civil enforcement provisions, which can convert a state law claim into one stating a federal claim. *Metro Life v. Taylor*, 481 U.S. 58 (1987). Conflict preemption is broader in its application and arises under 29 U.S.C. §1144(a), which preempts any state law claim that "relates to" an ERISA plan. ERISA either requires dismissal of United's state law claims because they "relate to" ERISA plans (as a result of the necessity of interpreting those plans to determine which benefits claims were permissible and which were not); or the re-characterization of United's state law claims because reclaiming monies paid out under ERISA-governed plans is one of the civil enforcement mechanisms of ERISA § 502.

## I.     United's State Law Claims are Subject to Conflict Preemption

ERISA's conflict preemption provisions of 29 U.S.C. § 1144(a) preempt and supersede any and all state laws, whether derived from legislative enactment or state common law, insofar as any law relates to an ERISA-governed plan. *Hall v. Newmarket Corp, et al.,* 747 F.Supp.2d 711, 715 (S.D.M.S. 2010) (citing *Lee v. E.I. DuPont de Nemours & Co*., 894 F.2d 755, 757–58 (5th Cir.1990)). "The Supreme Court has established that a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." *Hook v. Morrison Milling Co*., 38 F.3d 776, 781 (5th Cir. Tex. 1994) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)). The Fifth Circuit finds conflict preemption when "(1) The state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995). Preemption will apply even if the state law claims are not specifically designed to affect the ERISA plans or the plans are affected only indirectly. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. 1994) (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525 (1980)). Both the Supreme Court and the Fifth Circuit have acknowledged that ERISA's preemption language is deliberately expansive so ERISA's preemption provisions have a broad sweep.[1] *Heimann v. National Elevator Industry Pension Fund*, 187 F.3d 493, 512 (5th Cir.1999). In determining if conflict preemption applies, courts also consider "whether the state law claims are

---

[1] "Pre-emption of state law actions by federal law is to be decided based on the intent of Congress, which clearly intended the ERISA pre-emption clause to have an expansive reach." *Cefalu v. B.F. Goodrich Co.,* 871 F.2d at 1293 *(quoting Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985)) (citations omitted).

'bound up with interpretation and administration of the ERISA plan.'" *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2012).

Here, United is an admitted ERISA fiduciary that administers services for ERISA plans, and is considered a traditional ERISA entity for which conflict preemption applies. *See Mayeaux*, *supra*, 376 F.3d at 432; Counterclaims at ¶ 30. Because each counterclaim relies on the terms of ERISA plans, United's state law claims are preempted.

### a. Fraud, Fraudulent Non-disclosure, and Negligent Misrepresentation are subject to ERISA Conflict Preemption because the claims are based on the terms of the Plans themselves.

United's argument for Fraud and Negligent Misrepresentation are governed by ERISA's conflict preemption provisions because they are all based on the terms of its members' ERISA plans. Because "ERISA's preemption language 'is deliberately expansive, and has been construed broadly by federal courts.'" *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (citation omitted), if a fraud claim is based on a state law claim that "has a connection with or reference to" the terms of an ERISA plan, it will be preempted. *Id.* Where, as here, a fraud or negligent misrepresentation claim is based on payments owed or made under a plan, the claim is preempted. *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954 (5th Cir. 1999) (preempting state law claims by a hospital seeking recovery of benefits owed under a plan to a plan participant).

While United pleads its allegations of fraud and negligent misrepresentation without reference to the terms of the ERISA plans themselves, an examination of the counterclaims clearly shows conflict preemption should apply. United makes a variety of different allegations in its counterclaims, for instance: "Many plans provide that, when a UHC member receives services from an OON provider, the OON provider bills the member for the services . . ."

Counterclaims at ¶ 47.  "[The Labs] submitted claims to UHC representing that UHC's members owed thousands of dollars for the testing services . . ."  Counterclaims at ¶ 4.  "[Lab] committed fraud by making material false representations . . . in each of the claims they submitted to UHC."  Counterclaims at ¶¶ 311-363. "[M]any plans prohibit an assignment of benefits to providers, others authorize UHC to make payment of the member's benefits directly to their OON providers."  Counterclaims at ¶ 48.

Each of these claims shares a common element: each of them is based on alleged misrepresentations regarding the submission of claims for benefits under ERISA plans. This connection with ERISA necessitates a finding of ERISA preemption.  *See Transitional, supra*, 164 F.3d at 954; *Smith v. Texas Children's Hosp*., 84 F.3d 152, 154-155 (5th Cir. Tex. May 15, 1996); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983). The state law claims must be dismissed because they relate to services provided pursuant to ERISA plans.

### b. United's Claims under the Texas Theft Liability Act are subject to Conflict Preemption

United's counterclaim for violation of the Texas Theft Liability Act is preempted because it is based on alleged unlawful appropriation of benefits provided pursuant to ERISA plans. Texas Penal Code § 31.03 provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." The Southern District of Texas Court addressed whether claims under this statute were subject to ERISA preemption in *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*. In *St. Michael's*, the plaintiffs argued that the defendants unlawfully obtained services by failing to pay for treatments provided pursuant to the terms of ERISA plans. *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, 2011 U.S. Dist. LEXIS 155623, *68-69 (S.D. Tex. Aug. 22, 2011). Because the claims were based on a failure to pay as required under the plans, they were governed by ERSIA

and therefore preempted. *Id.* United cannot escape preemption since its claims are based on the ERISA plans. *See Weiner v. Tex. Health Choice, L.C.*, 2002 U.S. Dist. LEXIS 2654, *11 (N.D. Tex. Feb. 15, 2002) (no preemption where claims are not based on the ERISA plans). Where, as here, the ERISA plans are the basis for the violations of the Texas Theft Liability Act, however, the claims must be preempted.

United's claims under the Texas Theft Liability Act are subject to ERISA preemption because they are based on benefits provided under the ERISA plans of members. United's claims are based on: "words and numbers in the claims submitted to UHC . . .;" "words relayed and actions undertaken to UHC members;" and "promising performance . . . [the Labs] knew would not be performed, and did not actually perform." Counterclaims at ¶¶ 371-373. Each purported instance of conduct amounting to appropriation relates to billing for claims and providing services per the ERISA plans. Preemption applies even if the conduct alleged in the Counterclaims was in some instances only indirectly centered on the ERISA plans. *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781 (5th Cir. Tex. Nov. 14, 1994) (citations omitted). This nexus is sufficient for ERSIA conflict preemption to apply under Fifth Circuit law, and therefore the alleged violations of the Texas Theft Liability Act must be dismissed.

### c. Unjust Enrichment and Money Had and Received are subject to Conflict Preemption

United's state law claims for unjust enrichment and money had and received are subject to conflict preemption because they too are based on funds provided under the terms of ERISA plans. A claim "relates to" a health benefit plan when the claim is premised on the existence of an employee benefit plan. *Hall v. Newmarket Corp, et al., supra,* 747 F.Supp.2d at 715 (citing *Christopher v. Mobil Oil Corp.*, (950 F.2d 1209, 1220 (5th Cir. 1992)). Courts in the Fifth Circuit have analyzed ERISA preemption in the context of claims for unjust enrichment and

similar causes of action on several occasions. *First Nat'l Ltd. v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 108971, *14-15 (N.D. Tex. Oct. 12, 2010); *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt.*, LLC, 2011 U.S. Dist. LEXIS 155623, *46-47 (S.D. Tex. Aug. 22, 2011). A common aspect of the analysis for these claims is whether the claims themselves are based on funds provided under the ERISA plans. "Implicit in each of these claims is that [Defendant] is entitled to recover the proceeds as beneficiary under the Policy. Otherwise there would be no potential for unjust enrichment. **Absent the policy, then, neither of these claims exists**." *First Nat'l Ltd. v. Reliance Std. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 108971, at 14-15 (emphasis added).  A similar argument was rejected in *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC,* where the court concluded that unjust enrichment and money had and received were preempted because they required an analysis of the ERISA plans' terms. [2]

The same conclusion must be reached here. First, absent the ERISA plans, United would not have made any payments. Second, United's claims require an analysis of the ERISA plans themselves. This direct relationship between the claims and ERISA plans subject both unjust enrichment and money had and received to conflict preemption under 28 U.S.C. § 1144(a).

## II.     United's State Law Claims are Subject to Complete Preemption.

United's state and common law claims are completely preempted by 29 U.S.C. § 1132 and therefore must be re-characterized as federal claims under ERISA. *See Woods v. Texas Aggregates, LLC*, 459 F.3d 600, 603 (5th Cir. 2006). Pursuant to 29 U.S.C. §1132(e), complete preemption applies when, as here, (1) the plaintiff, at some point in time, could have brought his

---

[2] "In order for Cigna to recover under either theory, the Court must determine the nature of the benefits Cigna was required to pay, which necessarily directs this Court's inquiry to the plans, requires an analysis of the plans' terms, and presumably involves the calculation of payments due to members/patients under the various plans." *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *42 (S.D. Tex. June 1, 2016).

claim under 29 U.S.C. §1132(a); and (2) there is no other independent legal duty that is implicated by a defendant's actions.  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004).

### a.   United could have brought all of its state law claims under 29 U.S.C. § 1132(a).

As an ERISA fiduciary, United could have brought its state law claims under 29 U.S.C. § 1132(a) and sought equitable restitution under 29 U.S.C. § 1132(a)(3)(B). 29 U.S.C. § 1002 defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of [plans]." The Fifth Circuit has recognized the role of an insurance company as an ERISA fiduciary[3] and the applicability of complete preemption, even where claims are artfully pled to only include state law claims for relief.  *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000) (quoting *Heimann, supra*, 187 F.3d at 499). Here, United admits in its Counterclaims that it exercises discretionary authority in processing claims and admits that in this respect it is an ERISA fiduciary.  Counterclaims at ¶ 30.  Therefore, as an admitted ERISA fiduciary, nothing prohibited United from bringing its claims for relief under ERISA.

United could have requested equitable restitution pursuant to 29 U.S.C. § 1132(a)(3)(B) instead of choosing to pursue damages and relief through state law claims.  Equitable restitution is typically sought in the form of a constructive trust or equitable lien where, "'money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" *Central States v. Health Special*

---

[3] "In *Jimenez v. Sun Life Assur. Co. of Canada*, 486 Fed. App'x 398, 405 (5th Cir. 2012), where an injured claimant appealed the denial of health care benefits, the Fifth Circuit determined that the insurer was an ERISA fiduciary based on the terms of the insurer's policy. The policy expressly granted discretionary authority to the insurer to determine the plaintiff's eligibility for benefits as well as the right to interpret the terms of the policy for this purpose. This grant of authority, the Court found, qualified the insurer as a cognizable fiduciary. *Id.*"  *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, 2015 U.S. Dist. LEXIS 37022, *10 (S.D. Tex. Mar. 24, 2015).

*Risk, Inc.*, 756 F.3d 356, 362 (5th Cir. 2014) (quoting *Great-West Life & Annuity Ins. Co., vs. Knudson*, 534 U.S. 204, 213 (2002)). The crucial distinction between equitable relief allowed under 29 U.S.C. § 1132(a)(3) and legal relief is that "equitable restitution seeks only to restore to the plaintiff particular funds or property in the defendant's possession." *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 563-64 (W.D. La. Oct. 16, 2012) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Here, United is trying to recover funds it alleges are in the Labs' possession, but to which United is entitled: this form of relief sounds in equity and can be brought under 29 U.S.C. § 1132(a)(3). *See id.*[4]

**b.**   **No other independent legal duty exists.**

United's claims implicate no other duty independent of ERISA. *See Aetna Health, Inc. v. Davila, supra*, 542 U.S. at 210.   In *Davila*, the Supreme Court held that, although state law claims were asserted, the interpretation of the terms of benefit plans formed an integral part of the state law claims, such that there was no independent claim to defeat preemption.   *Id*. at 213. The state law duties United claims Plaintiffs breached are entirely dependent upon the terms of the ERISA plans, including such plans' medical necessity requirements and United's determination of covered services under each plan.   The only way to determine whether United is entitled to relief is an analysis of the ERISA plans and United's role as a fiduciary in providing administrative services. Because of this close nexus between the claims and the ERISA plans, United's state law claims are completely preempted.   United's claims all arise from the

---

[4] "In suits where the plaintiff seeks recovery of funds of which the defendant has maintained control and possession, this cause of action sounds in equity because the plaintiff is simply asking for the return of something the defendant wrongfully has. *See id*. The Fifth Circuit has adopted this standard, holding that '[a] defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, *but to eliminate a defendant's gain.*' *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 (5th Cir. 2007) (emphasis added)." *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 563-564 (W.D. La. Oct. 16, 2012).

obligations created by the plans alone.  "UHC provides administrative services for health benefit plans, including … the processing of claims for reimbursement of medical services provided to the individuals covered by health benefit plans."  Counterclaims at ¶ 27.  "All of UHC's Fully-Insured and Self-Funded Plans only provide benefits for services that are medically necessary." Counterclaims at ¶ 37. "Each clam misrepresented (or intended to create the false impression) that the services performed were necessary, misrepresented (or intended to create the false impression) that the amount listed was the amount owed by UHC's member . . . ." Counterclaims at ¶¶ 128; 130; 132; 134-35; 137-47; 150; 210; 214; 217; 232; 252.  As such, the only obligations sued on are those created by payments made to Claimants by United under plans it administers – meaning, the only legal duty alleged is one squarely subject to ERISA's civil enforcement provisions.

## III.   United's Tortious Interference with Contract claim is not sufficiently pled and should therefore be dismissed pursuant to FRCP 12(b)(6).

United's claims for tortious interference with contract, fraud, and negligent misrepresentation must be dismissed as a matter of law because they are insufficiently pled. Under Texas state law there are four elements to successfully prove a tortious interference with existing contracts: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *see also Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008).  The party alleging tortious interference has the burden of proving each element of the claim. *Dunn v. Calahan*, No. 03-05-00426-CV, 2008 Tex. App. LEXIS 9498, 2008 WL 5264886, at *3 (Tex. App.--Austin Dec. 17, 2008, pet. denied) (mem. op.)." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-675 (S.D. Tex.

Feb. 19, 2010). With respect to the second element requiring "a willful and intentional act of interference with the contract," the alleging party must present evidence of specific contract provisions that were breached. *Id.*

"General claims of interference with a business relationship are insufficient to establish a tortious interference with contract claim." *Id.* The claim must make it clear that the interference was intentional. *Homoki v. Conversion Servs.*, 717 F.3d 388, 396 (5th Cir. Tex. May 28, 2013). "Moreover, 'a plaintiff must show that the defendant took an active part in persuading a party to breach its contract . . . .[;] [m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach.'" *Seeberger v. Bank of Am.*, N.A., 2015 U.S. Dist. LEXIS 168348, *62 (W.D. Tex. Dec. 16, 2015) (quoting *Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 607-08 (S.D. Tex. 2014)).

Despite the length of its Answer & Counterclaims, United fails to allege with specificity that the Labs knowingly targeted contracts and that any provisions of the allegedly targeted contracts were breached.  This failure to provide detail is critical to United's claims. United's Counterclaims state that two of the Labs (Frontier and HCT) "knew that many medical providers had contracts with UHC that made the medical providers part of UHC's network" and that such contracts "generally require network physicians to request testing services from providers in UHC's network." Counterclaims at ¶¶ 388-389. United then alleges that because the Labs provided services for the medical providers despite not being in United's network, this amounted to tortious interference of contracts.  This argument is clearly lacking in specificity; United fails to reference any specific agreements, the terms of specific agreements, or how the Labs would have knowledge of the terms of these agreements. Furthermore, general allegations of

"kickbacks" being offered for services does not amount to a showing that the Labs took an active part in persuading any party to breach a specific provision of their agreements.  *See Seeberger v. Bank of Am.*, N.A., 2015 U.S. Dist. LEXIS 168348, *62 (W.D. Tex. Dec. 16, 2015).  Instead the Counterclaims allege the Labs had general knowledge of the contracts and what the terms might be.  These are exactly the kind of generalized tortious interference claims that are insufficient under Texas case law.  *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-675 (S.D. Tex. Feb. 19, 2010).  Even accepting United's allegations as true, the claim for tortious interference fails to allege sufficient detail and must be dismissed pursuant to F.R.C.P. 12(b)(6).

IV.     **Fraud and Fraudulent non-Disclosure are insufficiently pled as a matter of law and therefore should be dismissed pursuant to F.R.C.P. 12(b)(6)**

Federal Rule of Civil Procedure 9(b) "requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud . . . . The Fifth Circuit interprets Rule 9(b) strictly, requiring specific allegations as to each element of fraud." *BC's Heating & Air and Sheet Metal Works v. Vermeer Mfg. Co.*, 2012 WL 1067100 at *2 (S.D. Miss. 2012)(internal citations and quotation marks omitted); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). This requires that the party alleging fraud "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)(internal citations and quotation marks omitted).  "Under Texas law, fraud occurs when: (1) a party makes a material representation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injury." *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178,

1185 (5th Cir.1993); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 2016 U.S. Dist. LEXIS 71127, *46-47 (S.D. Tex. June 1, 2016).

United's pleadings are deficient with regards to the level of specificity when taking into account the Fifth Circuit's heightened pleading standard. United references allegedly fraudulent conduct, but does not provide any indication as to when or where the conduct occurred. The general, nonspecific nature of the allegations of supposed fraud provides no particularity tying any specific statements made by any particular individuals on any given occasion. Where the claim is lacking in such specificity, it must be dismissed. *See id.*

## V.   Negligent Misrepresentation is insufficiently pled as a matter of law and therefore should be dismissed pursuant to F.R.C.P. 12(b)(6)

In the Fifth Circuit, the heightened pleading standard applies to negligent misrepresentation as well as fraud claims in cases where the plaintiffs do not "urge a separate focus" on the negligent misrepresentation claims – for instance, where both claims "are based on the same set of alleged facts." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Lone Star Fund V (U.S.) LP v. Barclays Bank, PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010); *Center v. Total Body Contouring Incorporated*, 2017 WL 1093203 at *6 (N.D. Miss. 2017). "Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others in their business; and (3) the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v.*

*Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC, 2016 U.S. Dist. LEXIS 71127, *49 (S.D. Tex. June 1, 2016)

Here, Plaintiffs' claim of negligent misrepresentation is based on the same set of alleged facts as its fraud claim.   Accordingly, Plaintiffs are required under Federal Rule 9(b) to specifically allege in their pleadings, (1) what misrepresentation or omission of a fact Defendant is alleged to have made; (2) the materiality or significance of the alleged misrepresentation; (3) that Defendant "failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons"; (4) that Plaintiff reasonably relied on Defendants' alleged misrepresentation or omission; and (5) that Plaintiff suffered damages as a "direct and proximate result of such reasonable reliance . . . ."  *Spragins v Sunburst Bank*, 605 So.2d 777, 780. United's claim for Negligent Misrepresentation fails for the same reasons that its Fraud claim fails – it has not alleged any sufficiently specific facts to satisfy the particularity requirement of Rule 9(b). As with United's Fraud claim, notably missing in its Negligent Misrepresentation claim is the level of detail required by 9(b): the who, what, when, where, why, and how.  *See Sullivan*, 600 F.3d at 551. Because United fails to meet this standard, Negligent Misrepresentation must be dismissed as a matter of law.

**VI.     United cannot assert federal claims as an ERISA fiduciary and also assert state claims on its own behalf.**

United attempts to assert claims for the same damages as a fiduciary on behalf of ERISA plans and as a non-fiduciary on behalf of non-ERISA plans.  United uses this tactic to invoke its status as a fiduciary when beneficial, yet declares it is acting on its own behalf in regards to state law claims that rely on the exact same factual assertions as the ERISA claims.  United may not assert these dual roles with regard to the same set of facts to recoup the same alleged overpayments. The Supreme Court explained in *Pegram v. Herdrich* that while an entity can act

wearing its ERISA-fiduciary "hat" in some circumstances and not in others, "ERISA does require, however, that the fiduciary with two hats only wear one at a time…" *Pegram v. Herdich*, 530 U.S. 211, 225 (2000).   In *Pegram*, the Supreme Court reasoned that when analyzing a particular factual situation, the insurance provider is to be treated as an ERISA fiduciary, or not.   Because making payments to providers such as Labs is a fiduciary decision, and "the fiduciary with two hats . . . wear[s] the fiduciary hat when making fiduciary decisions," *id.* at 225, United's attempts to reclaim the payments are the actions of a fiduciary.   The Eleventh Circuit also has applied this rationale in a similar situation.[5]

Applying this logic to United's claims, United lacks standing to bring state law claims because here United is always acting as an ERISA fiduciary.   United consistently refers to fraudulent activity and misrepresentations regarding the submission of claims, without separating its role as a fiduciary or non-fiduciary or differentiating ERISA and non-ERISA based claims. *See, e.g.,* Counterclaims at ¶¶ 128, 130, 132, 134-35, 137-47, 150, 210, 214, 217, 232, 252. However, when it finds it beneficial, United attempts to distinguish between its fiduciary role with respect to ERISA-based claims and non-fiduciary role with respect to non-ERISA claims. *See* Counterclaims at ¶¶ 404-05; 417-18.   Even when United does this, however, it uses the same general reference to a controversy existing "regarding whether these denied claims are covered and payable under plans insured and/or administered by UHC."   Counterclaims at ¶ 409. United's state law claims are thus preempted as a result of its own pleadings.

---

[5] United attempted the same tactic in a previous case between the same parties in the Eleventh Circuit. The Court held that United did not have standing because United "cannot be *both* fiduciaries under ERISA § 502(a)(3) for purposes of their ERISA claims *and not* for purposes of their state law claims . . . ." *See United Healthcare Insurance Company et al. v. Sky Toxicology, Ltd., et al.* (Case No. 9:16-CV-80649); *see also Cotton v. Massachusetts Mutual Life Insurance Company*, 402 F.3d 1267 (11th Cir. 2005).

## VII.    THE SELF-FUNDED PLANS ARE NECESSARY PARTIES

Any self-funded plans and their administering employers for which United seeks to recover are necessary persons who must be joined to United's claims under Rule 19(a). United states in its Answer & Counterclaims that it deals with most self-funded plans and fully-insured plans. Counterclaims at ¶¶ 32-34. Unlike fully-insured health plans, where an employer and employees pay a premium to an insurance carrier who oversees and fully-insures the health plans, self-funded health plans are operated and self-funded by the employers. For self-funded plans, insurers typically provide administrative services only and the plans are completely self-funded by the employer and its employees.

The self-funded plans and their administering employers are necessary persons who must be joined to United's claims under Rule 19(a). An absent party is necessary under Rule 19(a)(1)(A) if "in [its] absence, the court cannot accord complete relief among the existing parties to the action." Alternatively, an absent party will be deemed necessary under Rule 19(a)(1)(B) when:

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Subsections (A) and (B) of Rule 19(a)(1) are    disjunctive—if the requirements of either subsection are met, the absent party must be joined. United's claims do not extinguish any right or remedy a self-funded plan or its administering employer may recover. The absence of the self-funded plans and their administering employers, therefore, creates a substantial risk of future liability, litigation, and vexation between Plaintiffs and the employers—including a substantial

risk that Plaintiffs could incur double, multiple, or otherwise inconsistent obligations. The self-funded plans and their administering employers are also unable to protect their interests by participating in any recovery obtained by United.

The self-funded plans and their plan-administering employers are also necessary parties to this suit under Rule 19(a)(1)(A) because complete relief cannot be accorded in their absence. *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819-21 (9th Cir. 1985) (concluding that self-funded plan-administering employer was a necessary and indispensable party to benefits suit). The plan-administering employers bear ultimate responsibility for the payment of benefits under their self-funded plans, and, consequently, any recovery of alleged overpayments made to Plaintiffs arising out of those plans would belong "in good conscience" to them, not United. Accordingly, this Court cannot accord the relief United seeks in the absence of the self-funded plans and their administering employers. As such, the claims United asserts arising from self-funded plans should be dismissed pursuant to Rule 12(b)(7).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that its Motion to Dismiss be granted and United's Counterclaims be dismissed in their entirety pursuant to F.R.C.P. 12(b)(1), 12(b)(6), and 12(b)(7).

Respectfully submitted,

**HORNBERGER FULLER & GARZA
INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209
Telephone (210) 271-1700
Facsimile (210) 271-1740


By:  _____/s/_____
     David W. Navarro
     State Bar No. 24027683
     David Jed Williams
     State Bar No.21518060
     Cassie G. Matheson
     State Bar No. 24074258

**ATTORNEYS FOR PLAINTIFFS**


**<u>CERTIFICATE OF SERVICE</u>**


     I HEREBY CERTIFY that on September 8, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

     _____/s/_____
     David W. Navarro


Andrew G. Jubinsky
Raymond E. Walker
FIGARI & DAVENPORT
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone (214) 939-2000
Facsimile (214) 939-2090

**ATTORNEYS FOR DEFENDANTS**