UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SKY TOXICOLOGY, LTD., SKY
TOXICOLOGY LAB MANAGEMENT, LLC,
FRONTIER TOXICOLOGY, LTD., FT LAB
MANAGEMENT, LLC, HILL COUNTRY
TOXICOLOGY, LTD., ECLIPSE
TOXICOLOGY, LTD., ECLIPSE
TOXICOLOGY LAB MANAGEMENT, LLC,
AND AXIS DIAGNOSTICS, INC.,

     Plaintiffs, Counterclaim-Defendants,

     VS.

UNITEDHEALTHCARE INSURANCE
COMPANY, UNITEDHEALTHCARE OF
FLORIDA, INC., UNITEDHEALTHCARE
OF TEXAS, INC., AND
UNITEDHEALTHCARE SERVICES, INC.,

     Defendants, Counterclaim-Plaintiffs.

Civil Action No. 5:16-cv-1094

**UNITED'S RESPONSE TO LABS'
MOTION TO DISMISS COUNTERCLAIMS**

Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Raymond E. Walker
Texas Bar No. 24037663
ray.walker@figdav.com
**FIGARI + DAVENPORT, L.L.P.**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

**Attorneys for Defendants/
Counterclaim Plaintiffs**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................... 1

**FACTUAL ALLEGATIONS**...................................................................................2

**ARGUMENT & AUTHORITIES** ......................................................................... 2

    I.    ERISA §514(a) does not preempt United's state law counterclaims. ........................... 3

    II.   Complete preemption does not apply to United's state law counterclaims. ............... 10

    III.  United's counterclaim for Tortious Interference with Contract is properly pled........ 13

    IV.  United's Fraud and Fraudulent Non-Disclosure Counterclaims are Sufficiently Pled. 15

    V.   United's Negligent Misrepresentation counterclaim is sufficiently pled. .................... 16

    VI.  United can assert ERISA claims as an ERISA fiduciary and also assert state law claims on its own behalf. ......................................................................................... 16

    VII. Self-Funded Plans are not necessary parties. ............................................................. 18

**CONCLUSION & REQUESTED RELIEF**........................................................... 20

Defendants/Counterclaim-Plaintiffs (collectively, "United") file this Response to Plaintiffs/Counterclaim-Defendants' (collectively, "Labs") Motion to Dismiss.

## <u>INTRODUCTION</u>

United's Counterclaims provide a detailed description of Labs' fraudulent schemes. Labs' business model is *designed to defraud* – and designed to defraud in a way that is very difficult to identify. Labs devised a complicated scheme to bribe medical providers and sober homes to order unnecessary testing. Labs intentionally incentivize the referral of unnecessary services, which are performed only so that they can be billed to private payors at extravagant amounts. Labs then pretend that United's members owe huge amounts for these unnecessary services, but know that they have no intention to collect any money from United's members. If Labs actually tried to collect from United's members for their overpriced and unnecessary testing, their scheme would fall apart.

Boiled down to its essence, Labs' Motion to Dismiss argues a perversion of the Employee Retirement Income Security Act of 1974 ("ERISA"). Labs would have this Court believe that when fraud is committed by a third party against an ERISA plan, the third party is insulated from state law tort liability by ERISA preemption. Courts have repeatedly rejected this fundamentally-flawed ERISA preemption argument because it ignores the purpose of the ERISA statutory scheme and would incentivize fraud committed against ERISA plans.

Labs argue that United's Counterclaims in this suit are a "desperate" attempt to revive claims rejected by the Southern District of Florida. Wrong. United did sue Labs in Florida; and the Florida federal court did dismiss the claims *without prejudice*. But the Florida federal court did not dismiss based on ERISA preemption. To the contrary, the Florida court expressly held

that *United's state law claims were not preempted by ERISA*, thus rejecting the central argument made by Labs here.[1]

United's state law claims against Labs survived the ruling of the Florida federal court. Labs used the procedural opportunity created by the Florida federal court's order deferring jurisdiction to the Florida state courts as an opportunity to forum shop by quickly re-positioning themselves as plaintiffs here, before United's state law claims could be re-filed in Florida. Labs are now asking this Court to reward them for their procedural gamesmanship—more than that, Labs are asking this Court to reward them for successfully deceiving United.

United seeks justice from this Court because Labs have chosen to force United to file mandatory counterclaims here.  Labs apparently believe that this Court is less likely to give United justice than other jurisdictions.  United refuses to believe this is true.  United is indifferent to jurisdiction as long as Labs are held responsible for their fraudulent schemes.

## ARGUMENT & AUTHORITIES

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[2] A claimant must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3] Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level,"[4] meaning that a claimant must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] *See* Order of Dismissal, attached as Exhibit "A."

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

[4] *Id*.

misconduct alleged."[5]

## I.     ERISA §514(A) DOES NOT PREEMPT UNITED'S STATE LAW COUNTERCLAIMS.

Labs contend that United's state law counterclaims are "conflict" preempted, under ERISA § 514(a) (also referred to as "ordinary" preemption), but offer no substantive analysis as to why that is, instead relying on conclusory and incorrect assertions that United's counterclaims are "based on" ERISA plan terms. Courts in this Circuit have unequivocally held that the fact that ERISA plans happen to be among the victims of providers' fraudulent schemes does not mean that a plan administrator's state law claims are "based on" ERISA plans or that preemption shields the providers from liability under state law.[6]

### A.     ERISA § 514(a) only preempts state law claims that "relate to" ERISA plans.

Ordinary preemption applies to "State laws insofar as they may now or hereafter relate to any employee benefit plan."[7] Recognizing the inherent difficulties in using the phrase "relate to" as the measuring stick for the scope of ERISA § 514(a) preemption, the Fifth Circuit and the Supreme Court have observed that they "simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."[8]

---

[5] *Iqbal*, 556 U.S. at 678.

[6] *See Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. 12-cv-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016) (holding Aetna's fraud claims against a provider for monies that "[the provider] tricked [Aetna] into paying" were not preempted, as ERISA "plans are merely the context of [the provider's] fraud"); *Fustok v. UnitedHealth Group, Inc.,* No. 12-cv-787, 2013 WL 2189874, at *6 (S.D. Tex. May 20, 2013) (denying provider's motion to dismiss because United's state law claims that provider engaged in a fraudulent billing scheme to obtain reimbursement from United were not preempted by ERISA).

[7] 29 U.S.C. § 1144(a) (emphasis added).

[8] *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 382 (5th Cir. 2011) ("*Access*"), *aff'd on reh'g*, 698 F.3d 229 (5th Cir. 2012) (en banc), *cert. denied*, — U.S. —, 133

---

ERISA's "objectives include establishing uniform national safeguards 'with respect to the establishment, operation, and administration of [employee benefit] plans,' and 'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans.'"[9]

The Fifth Circuit applies a two-part test to determine whether a claim would interfere with ERISA's objectives and should thus be preempted. The party seeking to apply § 514(a) preemption to a claim "must prove that: (1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries."[10]

To determine whether a state law tort claim "addresses" an area of exclusive federal concern,[11] courts look at the conduct alleged to be tortious and assesses whether *that conduct* is an activity that is regulated by ERISA's statutory framework.[12]  By looking to the conduct at issue, courts protect ERISA's statutory objectives, while preventing ERISA § 514(a) from "encompass[ing] virtually all state law."[13]

---

S.Ct. 1467 (2013) (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656 (1995) ("*Travelers*")).

[9] *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (quoting 29 U.S.C. § 1001(a), (b) (2000)).

[10] *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 799-800 (5th Cir. 2008) ("*Sawyer*") (citations omitted).

[11] For purposes of ERISA § 514(a), "areas of exclusive federal concern" are those that Congress sought to exclusively control and regulate by enacting ERISA, which include the management and administration of ERISA plans. *See Mayeaux*, 376 F.3d at 432; *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245, n.12 (5th Cir. 1990).

[12] *See Access*, 662 F.3d at 385-86.

[13] *Id.* at 382; *compare Mayeaux*, 376 F.3d at 432-33 (preempting claims for negligence and unfair trade practices because the conduct at issue was the ERISA plan administrator's "handling, review, and disposition of a request for coverage[,]" which are activities exclusively regulated by ERISA's statutory framework) *with Access*, 662 F.3d at 386 (state law negligent

When evaluating the second prong – whether claims "directly address the relationship between traditional ERISA entities" – "the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA."[14]  Medical providers, like Labs, are not traditional ERISA entities and no part of ERISA regulates the relationship between medical providers and plan fiduciaries or administrators.[15]  Further, ERISA does not regulate the accuracy of information supplied by beneficiaries to ERISA plans, administrators, or fiduciaries.[16]

### B.   United's state law counterclaims do not "relate to" ERISA plans.

United's state law claims are based on laws of general applicability, which make no reference to ERISA plans and do not rely upon ERISA plans to operate.[17]  Consequently, Labs

---

misrepresentation claim was not preempted because the conduct at issue – an ERISA plan administrator's alleged misrepresentations to providers – was not "a domain of behavior that Congress intended to regulate with the passage of ERISA.") *and Sawyer*, 517 F.3d at 799-800 (state law claims based on an employer's misrepresentations were not preempted, even though the claims specifically sought ERISA benefits as damages, because plaintiffs did not need to "prove that any aspect of [the ERISA plan's administration] was improper" to prevail on their claims and, as such, the claims did "not intrude into federal matters respecting the duties and standards of conduct for an ERISA plan administrator.").

[14] *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (5th Cir. 2006).

[15] *See Mem'l*, 904 F.2d at 249; *Access*, 662 F.3d at 385-86.

[16] *See Biondi*, 303 F.3d at 775, n.7 ("[W]e pause to emphasize that ERISA's 'disclosure' provisions only impose duties on plan administrators, employers, and fiduciaries, not plan participants."); *see also Lewis v. Bank of Am. NA*, 343 F.3d 540, 544 (5th Cir. 2003) ("[The plaintiff's] fraud . . . claims against the Bank, a non-fiduciary, and its employees bear little relationship to [ERISA's] objectives. Congress clearly did not intend to broadly immunize non-fiduciary parties such as the Bank from liability under traditional state law contract and tort causes of action.").

[17] Indeed, ERISA does not govern many of United's plans defrauded by Labs.  Even if the Court were to preempt United's state law counterclaims based on submissions made to ERISA plans, United's state law counterclaims as to submissions made to non-ERISA plans

---

"bear the *considerable burden* of overcoming the starting presumption that Congress does not intend to supplant state law."[18]  Labs contend that because the targets of their fraud were ERISA plans, United's state law counterclaims "relate to" ERISA plans and should be preempted.  Labs' argument is the type of boundless and superficial application of § 514(a) preemption that has been repeatedly denounced by the Supreme Court and the Fifth Circuit.[19]  Labs have failed to bear their "considerable burden"; their argument should be rejected for several reasons.

First, courts around the country have rejected Labs' ERISA § 514(a) preemption argument because to accept it would plainly go against Congress's intent in enacting the ERISA statutory scheme.[20]  While the Fifth Circuit has never directly addressed whether claims like United's are preempted by § 514(a), it has affirmed civil judgments for fraud against providers who made fraudulent claim submissions intended to steal from ERISA governed plans.[21]  Other circuits have considered the issue and universally determined that § 514(a) preemption does not apply in this context.[22]  Federal district courts in the Fifth Circuit and around the country have reached the same conclusion.[23]

---

would survive.  Of course, such an outcome is absurd and is just further proof that Labs' ERISA preemption argument is incorrect.

[18] *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (cites omitted and emphasis added).

[19] *See, e.g., Travelers*, 514 U.S. at 656; *Access*, 662 F.3d at 382.

[20] *Ass'n of N.J. Chiropractors v. Aetna, Inc*., No. 2012 WL 1638166, at *7 (D.N.J. May 8, 2012)  ("preventing an insurer from recovering from a provider for that provider's fraudulent or negligent misrepresentations would be at odds with the very purpose of ERISA").

[21] *Trustees of the Nw. Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994) (affirming judgment against provider who committed fraud, under Texas law, by submitting claims for reimbursement and failing to disclose material information).

[22] *See, e.g., Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996) (fraud claims brought by plan not preempted because "[t]he [ERISA] plan was only the context in which this garden variety fraud occurred."); *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765,

Second, under the Fifth Circuit's test for ERISA §514(a) preemption, it is Labs' burden to prove that United's state law counterclaims (1) address an area of exclusive federal concern and (2) directly affect the relationship among traditional entities.[24]  Labs do not even attempt to show that any of United's state law counterclaims satisfy either element.  This is likely because a substantive analysis demonstrates that United's state law counterclaims do not fall within either prong of the Fifth Circuit's test.

---

779 (7th Cir. 2002) (common law fraud claim against non-fiduciary party alleged to have defrauded plan does not implicate any of ERISA's fundamental concerns; "the [ERISA] plan is merely the context in which [the defendant's] fraudulent conduct occurred.").

[23] *See, e.g.*, *Fustok*, *supra*, 2013 WL 2189874, at *6; *Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC*, *supra*, 2016 WL 7496743, at *3; *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, No. 14-cv-03053, 2015 WL 12778048, at *24-31 (C.D. Cal. Oct. 23, 2015) (rejecting preemption against very similar state law claims, "the Court continues to rely on the purpose behind § 514 and the nature of the conduct at issue in this case."); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. 14-cv-02376, 2015 WL 4394408, at *17 (D. Md. July 15, 2015) (state law claims for fraud and negligent misrepresentation not preempted where "the core allegations of misconduct . . . relate to the fraudulent or negligent misrepresentations that the [provider-defendants] made to the [plan administrator-plaintiff] in order to obtain payments"); *Dist. Council 16 N. Cal. Health & Welfare Trust Fund v. Sutter Health*, No. 15-cv-00735, 2015 WL 2398543, at *1-6 (N.D. Cal. May 19, 2015) (ERISA did not preempt statutory unfair competition claim); *Arapahoe Surgery Ctr. v. Cigna Healthcare, Inc.*, No. 13-cv-3422, 2015 WL 1041515, at *6–7 (D. Colo. March 6, 2015) (ERISA did not preempt insurer's state law claims against surgery center); *Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*, 54 F. Supp. 3d 260, 264-68 (E.D. N.Y. 2014) (ERISA did not preempt insurer's claims for fraud, unjust enrichment, and money had and received); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 13-cv-02378, 2014 WL 1028351, at *5-8 (E.D. Cal. March 14, 2014) (ERISA did not preempt insurer's state statutory and common law claims); *Aetna Health Inc. v. Health Goals Chiropractic Ctr., Inc.*, No. 10-cv-5216, 2011 WL 1343047, at *3–6 (D.N.J. April 7, 2011) (ERISA did not preempt insurer's common law claims); *Aetna Health Inc. v. Srinivasan*, No. 10-cv-4858, 2010 WL 5392697, at *3 (D.N.J. Dec. 22, 2010); *Mass. Mut. Life Ins. Co. v. Marinari*, No. 07-cv-2473, 2009 WL 5171862, at *6-9 (D.N.J. Dec. 29, 2009) (ERISA did not preempt insurer's claim under state fraud statute).

[24] *Sawyer*, 517 F.3d at 799-800.

---

1. <u>United's state law counterclaims do not address an area of exclusive federal concern</u>.

Here, like the claims in *Access* and *Sawyer* that were not preempted, United's state law counterclaims do not address an area of exclusive federal concern, because the conduct at issue in the claims are Labs' misrepresentations and omissions.[25]  In fact, United's state law claims are much further removed from ERISA § 514(a)'s preemptive scope than the claims that were not preempted in *Access* and *Sawyer*.   Those cases involved claims brought *against a plan administrator and employer* – entities that are subject to the duties, obligations, and standards established by the ERISA statutory framework and were, therefore, intended to be protected from inconsistent state law claims.[26]  Yet, even in those cases, the Fifth Circuit determined that claims challenging misrepresentations that allegedly violated common law duties did not "address an area of exclusive federal concern."[27]

Labs are not ERISA entities and, as such, are not among the parties Congress intended to protect from potentially overlapping regulation and burdens imposed by state law claims.[28]

---

[25] *See Access*, 662 F.3d at 382-84; *Sawyer*, 517 F.3d at 800.  In fact, United's state law claims are much further removed from ERISA § 514(a)'s preemptive scope than the claims that were not preempted in *Access* and *Sawyer*.  Those cases involved claims brought *against a plan administrator and employer* – entities that are subject to the duties, obligations, and standards established by the ERISA statutory framework and were, therefore, intended to be protected from inconsistent state law claims.  *See Travelers*, 514 U.S. at 657.  Yet, even in those cases, the Fifth Circuit determined that claims challenging misrepresentations that allegedly violated common law duties did not "address an area of exclusive federal concern."  *Access*, 662 F.3d at 382; *Sawyer*, 517 F.3d at 800; *see also Mem'l*, 904 F.2d at 250.

[26] *See Travelers*, 514 U.S. at 657.

[27] *Access*, 662 F.3d at 382; *Sawyer*, 517 F.3d at 800; *see also Mem'l*, 904 F.2d at 250.

[28] *See Mem'l*, 904 F.2d at 249-50.

---

Indeed, it is axiomatic that Congress did not enact ERISA § 514(a) to supplant state law governing the accuracy with which providers supply information about their services to others.[29]

   2.   United's state law counterclaims do not directly affect the relationship between traditional ERISA entities.

Holding Labs responsible for their violations of Texas law will not affect the relationship between traditional ERISA entities.  First, Labs are not traditional ERISA entities.[30]  Second, no part of the ERISA statutory framework regulates the relationship between providers and plan administrators.[31]  Third, even if Labs were somehow construed to be beneficiaries for purposes of the analysis, no part of the ERISA statutory framework regulates the accuracy of information supplied by beneficiaries to ERISA plans, administrators, or fiduciaries.[32]  In short, holding medical providers responsible for their violations of Texas common and statutory law does not affect the relationship between traditional ERISA entities.

Again, Labs do not even attempt to apply this analytical framework to United's state law counterclaims. The cases they do cite, however, do not change the outcome of the analysis.  For example, Labs cite two Fifth Circuit cases to support the proposition that "misrepresentations regarding the submission of claims for benefits under ERISA plans . . . necessitate[] a finding of ERISA preemption."[33]  But in both those cases the Fifth Circuit specifically recognized that where the conduct at issue in a claim was the veracity of representations made, as opposed to

---

[29] *Id.; see also Lewis*, 343 F.3d at 544 ("Congress clearly did not intend to broadly immunize non-fiduciary parties such as [Labs] from liability under traditional state law contract and tort causes of action.").
[30] *See Mem'l*, 904 F.2d at 249.
[31] *See id.*, at 249-250; *Access*, 662 F.3d at 385-86.
[32] *See Biondi*, 303 F.3d at 775, n.7.
[33] Docket Entry ("DE") 8, p. 8.

whether the plan was properly administered, ERISA preemption would not apply.[34]   This
distinction belies Labs' § 514(a) preemption contentions.[35]

## II.   COMPLETE PREEMPTION DOES NOT APPLY TO UNITED'S STATE LAW COUNTERCLAIMS.

Labs argue that, pursuant to 29 U.S.C. § 1132(e), the ERISA complete preemption
doctrine should transform United's state law counterclaims into federal ERISA claims.[36]
Complete preemption applies where a party can prove that (1) the claim at issue could have been
brought under ERISA § 502(a) and (2) there is no other independent legal duty that is implicated

---

[34] *See Transitional Hosps. Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 954-55 (5th
Cir. 1999) (affirming preemption of claim where challenged conduct was an "alleged failure to
pay the full amount of benefits due under the terms of the policy," which is an area of exclusive
federal concern but reversing district court's preemption of claim where challenged conduct was
veracity of information provided by the plan to the hospital); *Smith v. Tex. Children's Hosp.*, 84
F.3d 152, 155, 157 (5th Cir. 1996), 84 F.3d at 157 ("Smith's entitlement to benefits under Texas
Children's ERISA plan can be considered separately from the question whether Texas Children's
misled her into believing that she would be entitled to benefits under that plan; the former
question requires reference to Texas Children's plan, while the latter focuses on what Texas
Children's told her.").

[35] The district court cases cited by Labs do not change the analysis; indeed, most are
basic § 514(a) preemption cases, where parties are challenging the denial of benefits owed under
an ERISA plan.  *See, e.g., St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC*, No.
H-08-2336, 2011 WL 12896736, at *21 (S.D. Tex. Aug. 22, 2011) (Texas Theft Liability Act
claims preempted because challenged conduct was failure to pay for services rendered "as
provided for under the ERISA plans"); *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La.
2012) (state law claims against plan administrator preempted because challenged conduct was
the reasonableness of the administration of the plan, an area of exclusive federal concern).

[36] Complete preemption is technically a jurisdictional doctrine (transforming state law
claims into federal claims to create federal question jurisdiction) and is not a defense to state law
claims that are otherwise properly maintained in federal court. *See, e.g., Haynes v. Prudential
Health* Care, 313 F.3d 330, 333-34 (5th Cir. 2002) ("Unlike the scope of § 502(a)(1)(B), which
is jurisdictional and creates a basis for removal to federal court, § 514(a) ... governs the law that
will apply to state law claims, regardless of whether the case is brought in state or federal
court."); *Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, No. 6:16-CV-0003, 2016 WL 2756589,
at *16 (S.D. Tex. May 9, 2016) ("Moreover, the finding of complete preemption is a
jurisdictional determination, not one based on the merits of Plaintiffs' case.").   Out of an
abundance of caution, however, United will explain complete preemption does not apply to its
state law counterclaims in this case.

---

by the defendant's actions.[37]   United's state law counterclaims do not satisfy either prong of this test.

**A. United's state law counterclaims could not have been brought under ERISA.**

Labs contend that United could have brought its state law counterclaims under ERISA § 502(a) because United is a fiduciary of the ERISA plans and it can get relief in the form of equitable restitution.  This argument completely ignores United's allegations; United's state law counterclaims are not based any plan terms, do not seek to enforce any plan terms, and seek legal damages, not equitable restitution.

A claim can only be brought under § 502(a) when it seeks "to recover benefits due . . . under the terms of [a] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits due . . . under the terms of the plan."[38]   None of United's state law counterclaims seek benefits due under a plan's terms, enforce rights under a plan's terms, or clarify future benefits due under a plan's terms.  Indeed, as Labs acknowledge, United's state law counterclaims do not reference any plans' terms.[39]   United's state law counterclaims are based on Labs' systematic and calculated fraudulent conduct that violated Texas laws and the laws of many other states, not on enforcing the language contained in any plan.

**B. Labs' actions implicate numerous independent legal duties.**

Labs contend that "United's claims implicate no other legal duty independent of ERISA."[40]   To the contrary, however, United's state law counterclaims arise from Labs' breach of common law and statutory duties, which are independent from, and do not arise out of, any

---

[37] *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004).
[38] 29 U.S.C. § 1132(a)(1)(B).
[39] DE 8, p. 7.
[40] DE 8, p. 12.

ERISA plan.

Under Texas common law, parties have a duty to refrain from making material misrepresentations with the intention that the misrepresentation will be acted on by another.[41] Similarly, under Texas statute, there is a duty to refrain from using deceit to obtain property (including money).[42] United's state law counterclaims are based on Labs' violation of these duties, which are independent from any duties contained in an ERISA plan.

Further, under Texas common law, parties have a duty to disclose information when the parties have a fiduciary or special relationship, when a party conveys a false impression by making a partial disclosure, and where a party voluntarily discloses some information, that party must disclose the whole truth.[43] Labs owed United duties of disclosure for several reasons. First, Labs conveyed a false impression by making partial disclosures.[44] Second, Labs voluntarily disclosed some information, requiring them to disclose the whole truth.[45] Third, courts have considered the relationship between a provider and an entity to which the provider submits insurance claims for reimbursement to have a "confidential relationship," sufficient to give rise to a duty to disclose that the services provided were illegal.[46]

Complete preemption does not apply where, like here, there is already federal jurisdiction. And even if it was an appropriate test in this circumstance, United's state law

---

[41] *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W. 3d 573, 577-79 (Tex. 2001).
[42] Tex. Civ. Rem. Code § 134.002; Tex. Penal Code §§ 1.07, 31.01, and 31.03.
[43] *Lesikar v. Rappeport,* 33 S.W. 3d 282, 298–99 (Tex. App.—Texarkana 2000, pet. denied).
[44] *See, e.g.,* DE 6, ¶¶ 314, 315.
[45] *Id.* ¶¶ 316, 317.
[46] *See Burzynski*, 27 F.3d at 156-58.

counterclaims do not satisfy either prong, much less both. Labs' complete preemption should be rejected accordingly.

### III.   UNITED'S COUNTERCLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT IS PROPERLY PLED.

Labs argue that United's tortious interference with contract claim "fails to allege sufficient detail and must be dismissed pursuant to F.R.C.P. 12(b)(6)."[47]   Even if Rule 9(b) applied to claims for tortious interference with contract, United's counterclaim would be sufficiently pled.

"The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss."[48] United alleges the presence of existing contracts with medical providers, that Frontier and HCT willfully, intentionally and without justification targeted those contracts and interfered with them by using illegal kickbacks to persuade the medical providers to breach the terms of their contracts with United by making out-of-network referrals to HCT and Frontier.[49]   United alleges that HCT and Frontier's willful and intentional acts caused it to suffer millions of dollars of harm.[50]   This is sufficient to state a claim for tortious interference with contract.

Although it is unclear, it seems that Labs do not contend that United fails to allege any element of the claim.   Instead, Labs contend that United's tortious interference counterclaim is insufficiently pled because "United fails to allege with specificity that Labs knowingly targeted

---

[47] DE 8, pp. 13-15.
[48] *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74, 77 (Tex. 2000).
[49] DE 6, ¶¶ 387-393.
[50] *Id.* at ¶ 394.

contracts and that any provisions of the allegedly targeted contracts were breached."[51]

The cases cited by Labs do not impose Rule 9(b)'s specificity requirements and, at a more general level, are completely inapposite to United's counterclaim. Four of the cases dealt with whether sufficient evidence had been presented to support *summary judgment or a verdict*, which is a completely different inquiry than the one undertaken at the motion to dismiss stage.[52] The fifth case dismissed a *pro se* plaintiff's "disjointed and convoluted" second amended complaint, which the court read liberally to include a tortious interference with contract claim.[53] The court dismissed the claim because it failed to allege that the defendants acted willfully or intentionally, or took part in persuading the other party to breach the contract, and also because it failed to allege any resulting damages.[54]

United's tortious interference with contract counterclaim plainly alleges the required elements and also provides specific details about the parties with which it has contracts, why Frontier and HCT persuaded those parties to violate their contracts with United, the provisions in

---

[51] DE 8, p. 14.

[52] *See Dunn v. Calahan*, No. 03-05-00426-cv, 2008 WL 5264886, at *4-5 (Tex. App.—Austin Dec. 17, 2008) (affirming trial court's grant of summary judgment on tortious interference with contract claim because claimant offered no evidence that defendant's act was willful or intentional); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-75 (S.D. Tex. 2010) (granting summary judgment on tortious interference with contract claim because claimant failed to present or identify evidence supporting claim); *Homoki v. Conversion Servs.*, 717 F.3d 388, 396-97 (5th Cir. 2013) (evaluating whether sufficient evidence was presented to jury to support verdict on tortious interference with contract claim); *Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 607-08 (S.D. Tex. 2014) (magistrate's recommendation), *adopted report and recommendation* No. H-12-2044, 2014 WL 1493857 (S.D. Tex. April 15, 2014) (finding insufficient evidence was identified to survive summary judgment).

[53] *Seeberger Bank of Am., N.A. Ventures Trust 2013 I.H.R. v. Seeberger*, No. EP-14-cv-366-KC, 2015 WL 9200878, at *22 (Dec. 15, 2015 E.D. Tex.).

[54] *Id.*

---

the contracts that were violated, and how United was harmed by such actions.[55]   These allegations are sufficient to state a claim, even if United were required to state the claim with specificity.

**IV.   UNITED'S FRAUD-BASED COUNTERCLAIMS ARE SUFFICIENTLY PLED.**

Labs only offer a bare, conclusory argument that United fails to allege its counterclaims for fraud and fraudulent nondisclosure with the specificity required by Rule 9(b).  United alleges hundreds of particularized fraudulent acts, each identifying the entity that made the fraudulent submission, the date of the submission, and the way in which the submission was fraudulent.[56] United has sufficiently pled its fraud and fraudulent nondisclosure counterclaims, and Labs' argument should be rejected accordingly.

United's fraud claims are subject to Fed. R. Civ. P. 9(b), which requires a claim to state with particularity the circumstances constituting fraud or mistake.  "A claim generally satisfies the particularity standard of Rule 9(b) when the [claimant] pleads the time, place, and contents of the false representation and the identity of the person making the representation."[57]  If the facts relating to the alleged fraud are uniquely within the perpetrator's control or where fraud occurred over a long period of time and consists of numerous acts, Rule 9(b) is applied less stringently.[58]

United's fraud claims satisfy Rule 9(b)'s specificity requirements because United specifically identifies hundreds of fraudulent claims that Labs submitted to it, including the Lab that submitted each claim, the day each claim was submitted to United, and the way that the

---

[55] DE 6, ¶¶ 387-393.
[56] *See, e.g.,* DE 6, ¶¶ 150, 190, 210, 240, 252, 260, 263, 272, 287.
[57] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).
[58] *See U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998) ("It has been widely held that where the fraud allegedly was complex and occurred over a period of time, the requirements of Rule 9(b) are less stringently applied.").

claim was intended to mislead United and/or the various types of misrepresentations contained therein.[59]   Further, United's pleading contains details describing the overarching mechanics of Labs' fraudulent schemes, such as how Labs induced unnecessary testing requests by paying kickbacks[60]; how Labs disguised the kickbacks[61]; the specific amounts of kickbacks that were made and received[62]; links specific kickbacks to specific fraudulent claims[63]; how Labs inflated the amounts charged per specimen[64]; how Labs drove up the number of specimens that they received for testing[65]; and how Labs attempted to hide the scheme from United and its members.[66]   United's fraud and fraudulent nondisclosure claims satisfy even the most stringent application of Rule 9(b).

**V.   UNITED'S NEGLIGENT MISREPRESENTATION COUNTERCLAIM IS SUFFICIENTLY PLED.**

Labs do not contend that any element of United's negligent misrepresentation claim is insufficiently pled, but only that, like the fraud and fraudulent nondisclosure claims, there is insufficient specificity.   This argument fails for the same reasons as Labs' argument against United's fraud and fraudulent nondisclosure counterclaims fail.

**VI.   UNITED CAN ASSERT ERISA CLAIMS AS AN ERISA FIDUCIARY AND ALSO ASSERT STATE LAW CLAIMS ON ITS OWN BEHALF.**

It is unclear what Labs' are attempting to argue in their sixth point. They assert that UHC "lacks standing to bring state law claims" and also that "United's state law claims are thus

---

[59] DE 6, ¶¶ 123-252; 314-317; 324-328; 335-339; 345-349; 356-360.
[60] *Id.* at ¶¶ 102-103.
[61] *Id.* at ¶ 95.
[62] *Id.* at ¶¶ 194, 208.
[63] *Id.* at ¶¶ 210, 214.
[64] *Id.* at ¶¶ 264-269.
[65] *Id.* at ¶¶ 285-287.
[66] *Id.* at ¶¶ 289, 292.

preempted . . . ."[67]  Standing and preemption are two different issues and Labs do not offer any insight as to why or how they are related in this context.

What is clear, however, is that Labs' argument is based on the false premise that United is asserting ERISA claims and state law claims that seek to recover *the same alleged overpayments*.  United's state law counterclaims seek to recover damages from Labs for their violations of Texas common law and statutory duties, which are entirely independent from ERISA and the terms of any plan.  United's ERISA claims do not seek any damages (or even to recover any overpayments via "other equitable relief"); rather, Counterclaim 7 seeks declaratory relief regarding denied claims and Counterclaim 8 seeks injunctive relief regarding future claim submissions.[68]  United's pleading is very clear on this point.[69]  Conversely, United's state law claims seek to recover legal damages caused by Labs' fraudulent conduct.

Labs discuss *Pegram v. Herdich*,[70] but fail to articulate how it is applicable to this case. In *Pegram*, the Supreme Court considered whether an HMO could be sued for breach of ERISA fiduciary duty based on its physician-owners treatment decisions.[71]  The Supreme Court emphasized that some of the physician-owner's actions would be subject to the ERISA fiduciary duties owed by the HMO to a patient, but that not all actions would be and to make the determination, courts should look to the action that forms the basis of the claim.[72]  Because the conduct at issue in the breach of fiduciary duty claim was the physician-owners' practice of

---

[67] DE 8, p. 18.
[68] *See* DE 6, ¶¶ 406-419.
[69] DE 6, ¶ 410 ("This relief does not overlap or coincide with UHC's state-law claims, but rather only applies to outstanding claims for which UHC has denied coverage.").
[70] 530 U.S. 211 (2000).
[71] *Id.* at 214.
[72] *Id.* at 226.

medicine, a field outside of ERISA's regulatory scheme and generally regulated by the states, the patient could not use those actions as the basis of an ERISA breach of fiduciary duty claim.[73]

Labs attempt to apply *Pegram* to this case, but do not explain how or why it applies.  The Supreme Court's rationale actually supports United's state law counterclaims.  The reason that the ERISA "hat" was important in *Pegram* was because, in order for the cause of action to survive, the ERISA "hat" had to be on while the conduct that the cause of action was based on, i.e., challenging, was being performed.[74]  Here, however, the conduct being challenged in United's state law counterclaims – the veracity and candor with which Labs supplied information to United – are indisputably divorced from ERISA.

## VII.   SELF-FUNDED PLANS ARE NOT NECESSARY PARTIES.

Labs' final argument is that self-funded plans are "necessary parties," under Fed. R. Civ. P. 19(a).  This argument ignores that United, pursuant to ASAs with the self-funded plans' sponsors, "has the authority, responsibility, and discretion . . . to pursue overpayments, fraud, waste, and abuse on behalf of the plan[s]" and the self-funded plan sponsors "delegate[] to [United] the authority to recover overpayments (including those related to fraud and abuse), as well as the authority to initiate litigation to recover overpayments."[75]  As a result of the ASAs, complete relief can be afforded amongst the existing parties, the interests of the self-funded plans are protected, and Labs will not be subject to subsequent inconsistent or overlapping obligations; thus the self-funded plans are not necessary parties.

Under Rule 19(a)(1):

---

[73] *Id.* at 231-35.
[74] *Id.*  The same flaw applies to Labs' invocation of *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005).
[75] DE 6, ¶¶ 32-33.

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"The definition of 'complete relief' under Rule 19(a)(1) refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought."[76]

Labs argue that the self-funded plan sponsors qualify as necessary parties under 19(a)(1)(A) because "the plan-administering employers bear ultimate responsibility for the payment of benefits under their self-funded plans . . . any recovery of alleged overpayments made to [Labs] would belong [to the plan administering employers]," thus the court cannot accord complete relief without them.[77]  This argument misconstrues the meaning of "complete relief," for the purposes of Rule 19(a)(1).  The fact that a contractual provision between United and self-funded plan sponsors may require damages recovered by United to be dispersed to those self-funded plan sponsors does not mean that "complete relief" cannot be accorded.[78]  United "can obtain complete relief as contemplated by Rule 19(a)(1)(A) because failing to join [the self-funded plans]  does not prevent [United] from achieving the objectives of its suit."[79]  United's recovery and its subsequent dispersion of the funds to the self-funded plan sponsors is a

---

[76] *Niven v. E-Care Emerg. McKinney, LP*, No. 4:14-cv-00494, 2015 WL 1951811, at *2 (E.D. Tex. Apr. 10, 2015) (quoting *Ortiz v. A.N.P., Inc.*, No. 10-cv-917, 2010 WL 3702595, at *4 (S.D. Tex. Sept. 15, 2010)).

[77] DE 8, p. 20.

[78] *See Niven*, 2015 WL 1951811, at *2.

[79] *Broadcast Music, Inc. v. Armstrong*, 2013 WL 3874082, at *5 (W.D. Tex. July 24, 2013).

contractual matter between United and those clients. [80]

Labs also argue that the self-funded plan sponsors qualify as necessary parties under 19(a)(1)(B) for two reasons. First, because "United's claims do not extinguish any right or remedy a self-funded plan or its administering employer may recover," which, if true, would create the risk of future overlapping litigation and inconsistent liabilities. [81] Second, because "[t]he self-funded plans and their administering employers are also unable to protect their interests[.]" [82] Each of these arguments also fail. The self-funded plans are not "necessary parties" under Rule 19(a)(1)(B), because (i) United has contracted with the self-funded plans to protect their interests in suits like this and (ii) Labs will not be subject to multiple or inconsistent obligations as a result of this suit, because United has the exclusive authority to recover overpayments made because of fraud and to initiate litigation to do so. [83] Labs' Rule 19 argument should be rejected, but even if it is not, it does not present grounds for dismissal under 12(b)(7). [84]

## CONCLUSION & REQUESTED RELIEF

For these reasons, Labs' Motion to Dismiss should be denied in its entirety.

---

[80] The only legal support Labs provide for this argument, *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819-20 (9th Cir. 1985), is notable because it dealt with exactly the opposite circumstances. There, it was the insurer who was *being sued. Id.* The reason that the self-funded plan was considered to be a necessary party was because of the potential that the claimant may not have been able to obtain "complete relief" from the insurer. *Id.* Thus, while it is possible that self-funded plans may be necessary parties in Labs' claims against United, the same is not true when it is United who is the claimant, because United can achieve the objectives of it suit. *Id.*; *see also Broadcast Music, Inc.*, 2013 WL 3874082, at *5.

[81] DE 8, p. 19-20.

[82] *Id.*

[83] DE 6, ¶¶ 32, 33.

[84] *See Cooper v. Kliebert,* Nos. 14-507-SDD-EWD, 15-751-SDD-RLB, 2016 WL 3892445, at *6 (M.D. La. July 18, 2016) ("dismissal is warranted only when the defect is serious and cannot be cured.") (quoting 5C Wright & Miller, Federal Practice & Procedure § 1359)).

Dated: September 22, 2017          Respectfully submitted,

By:  /s/ Andrew G. Jubinsky               
        Andrew G. Jubinsky
        Texas Bar No. 11043000
        andy.jubinsky@figdav.com
        **Attorney-in-Charge**

**Of Counsel:**
Raymond E. Walker
Texas Bar No. 24037663
ray.walker@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas  75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

     This is to certify that a true and correct copy of the foregoing document has been served on the parties listed below on September 22, 2017.

David W. Navarro
David Jed Williams
Hornberger Fuller & Garza Incorporated
7373 Broadway, Suite 300
San Antonio, Texas 78209
*Attorney for Plaintiffs*

               /s/ Andrew G. Jubinsky             
               Andrew G. Jubinsky