IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SKY TOXICOLOGY, LTD., SKY TOXICOLOGY LAB MANAGEMENT, LLC, FRONTIER TOXICOLOGY, LTD., FT LAB MANAGEMENT, LLC, HILL COUNTRY TOXICOLOGY, LTD., ECLIPSE TOXICOLOGY, LTD., ECLIPSE TOXICOLOGY LAB MANAGEMENT, LLC, AND AXIS DIAGNOSTICS, INC.,

Plaintiffs, Counterclaim-Defendants,

VS.

Civil Action No. 5:16-cv-1094

UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF FLORIDA, INC., UNITEDHEALTHCARE OF TEXAS, INC., AND UNITEDHEALTHCARE SERVICES, INC.,

Defendants, Counterclaim-Plaintiffs.

**COUNTERCLAIM-PLAINTIFFS' RESPONSE TO COUNTERCLAIM-DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION ON MOTION TO DISMISS COUNTERCLAIMS**

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

Stephen W. Mooney
smooney@wwhgd.com
Texas Bar No. 14319100
3344 Peachtree Road, NE
Suite 2400
Atlanta, Georgia 30326
Telephone: (404) 876-2700
Facsimile: (404) 875-9433

and

Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Raymond E. Walker
Texas Bar No. 24037663
ray.walker@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

*Attorneys for Defendants/ Counterclaim-Plaintiffs*

Pursuant to Fed. R. Civ. P. 72(b), Counterclaim-Plaintiffs/Defendants (collectively, "United") file this response to Counterclaim-Defendants/Plaintiffs' (collectively, the "Labs") Objection [ECF No. 46] to Magistrate Judge Farrar's Report and Recommendation [ECF No. 44] on the Labs' Motion to Dismiss United's Counterclaims, and state:

## I. INTRODUCTION

The Labs' Objection does not take issue with any part of Magistrate Judge Farrar's Report and Recommendation. They appear to agree on the applicable laws and legal standards. They do not address how or why the Report and Recommendation's analysis is incorrect. They simply reassert the same superficial and conclusory arguments from their original Motion. The Court should adopt Magistrate Judge Farrar's Report and Recommendation.

On August 18, 2017, United filed counterclaims against the Labs. [ECF No. 6.] The Labs' filed a Motion to Dismiss United's Counterclaims, arguing that (1) United's state-law claims should be preempted by ERISA, (2) United lacked standing to assert state-law claims, (3) United's state-law claims were not pleaded with sufficient specificity, and (4) United's claims should be dismissed under Rule 19 for failure to join necessary parties. [ECF No. 8.]

After a full set of briefing, on September 4, 2018, Magistrate Judge Farrar issued a Report and Recommendation that the Labs' Motion be denied. [ECF No. 44.] The Report and Recommendation thoughtfully addressed each of the Labs' arguments and analyzed why the arguments were incorrect. Three particular recommendations are at issue here. First, Magistrate Judge Farrar explained that the Labs failed to satisfy *either* prong of the Fifth Circuit's test for ERISA conflict preemption. The first prong requires a showing that United's state-law claims "address an area of exclusive federal concern," but Magistrate Judge Farrar concluded that "the Labs' argument touches areas of federal concern in a way that is simply 'too tenuous, remote, or

peripheral . . . to warrant a finding that the [state] law relates to the plan.'" [*Id.* at 8.] The second prong requires a showing that the state-law claims directly affect a relationship between traditional ERISA entities, but Magistrate Judge Farrar recognized that the Labs are not a traditional ERISA entity and no part of the ERISA statutory framework regulates the accuracy of information supplied by beneficiaries to an ERISA plan (much less by beneficiaries' assignees). [*Id.* at 13.]

Second, Magistrate Judge Farrar explained that United's state-law counterclaims seek to recover damages for violations of Texas common law and statutory duties, which are independent from the terms of any plan, and United is not acting as an ERISA fiduciary in asserting these state-law claims. United's ERISA claims do not seek damages, but only equitable relief in the form of a declaration that United's denial of Labs' claims was appropriate and injunctive relief regarding future claim submissions. Thus, even if United were wearing an ERISA fiduciary "hat" for its ERISA claims,[1] it is not wearing an ERISA fiduciary "hat" while asserting its state law claims and "the Fifth Circuit has recognized that a party may qualify as an ERISA fiduciary with regard to some claims but not others." [*Id.* at 17.]

Third, Magistrate Judge Farrar described how United's pleadings satisfied the heightened Rule 9(b) pleading standard by alleging "hundreds of particularized fraudulent acts, each identifying the entity that made the fraudulent submission, the date of the submission, the reason(s) the submission was allegedly fraudulent, and the providers who allegedly participated in the fraudulent scheme" and describing "the precise manner in which the Labs allegedly operated this scheme—by inducing medical providers with kickbacks, how the Labs allegedly

[1] Of course, as United alleges, only in certain circumstances and for certain plans is it an ERISA fiduciary. [ECF No. 6, p. 20, ¶ 30.]

disguised these kickbacks, and their policy of writing off patient account balances." [*Id.* at 18.]

On September 18, 2018, the Labs objected to Magistrate Judge Farrar's Report and Recommendation. [ECF No. 46.] The Labs raise three objections to the Report and Recommendation: (A) United's state-law claims should be preempted because they are "bound up in the terms of ERISA plans" and the interpretation of the plans directly affects the relationship between ERISA plans and beneficiaries; (B) United cannot bring state-law claims while acting as an ERISA fiduciary; and (C) United's fraud and negligent misrepresentation claims are not plead with the necessary specificity.

## II. ANALYSIS

The Court reviews objections to a Report and Recommendation *de novo*, examining the entire record and making an "independent assessment of the law." *Johnson v. Sw. Research Inst.*, 210 F. Supp. 3d 863, 864 (W.D. Tex. 2016) (Biery, C.J.). "The Court need not, however, conduct a *de novo* review when the objections are frivolous, conclusive, or general in nature." *Id.* (citing *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987)). A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

This Court should adopt Magistrate Judge Farrar's Report and Recommendation. Each of the Labs' three objections are briefly addressed below.[2]

### A. United's state-law counterclaims are not preempted by ERISA.

ERISA "conflict" preemption does not apply because the crux of United's state-law claims are the Labs' alleged fraudulent or negligent misrepresentations, which concern the

[2] The Labs simply restate each of these arguments from their original Motion. The issues were thoroughly briefed by United and discussed at length in Magistrate Judge Farrar's Report and Recommendation.

veracity with which the Labs submitted information to United. These state-law claims do not challenge the way that ERISA plans processed information or how any ERISA plan terms were interpreted.

For ERISA conflict preemption to apply, the Labs "must prove that: (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 799 (5th Cir. 2008). (quotes omitted). ERISA preemption is an affirmative defense and the Labs bear the burden of proof on both elements. *Bank of La. v. Aetna US Healthcare Inc.,* 468 F.3d 237, 242 (5th Cir. 2006).

To determine whether state claims implicate an area of exclusive federal concern, courts often look to whether the state law claims are "bound up with interpretation and administration of the ERISA plan." *Nixon v. Vaughn*, 904 F. Supp. 2d 553, 561 (W.D. La. 2012)). The Fifth Circuit has consistently held that state law claims that challenge the scope or nature of representations do not address an area of exclusive federal concern. *See, e.g., Bank of La.*, 468 F.3d at 243 (holding claims not preempted because the "claims do not challenge any act or omission by Aetna in processing benefit claims or administering the Plan; rather, they call into question Aetna's representations about the scope of the stop-loss extension").

The Labs do not show how United's state law claims address an area of exclusive federal concern. Their only attempt to do so is based on framing United's state law claims as addressing whether services were "medically necessary." [ECF No. 46, p. 4.] But United's state law claims do not seek to resolve whether services were "medically necessary," they seek to resolve whether

the Labs knowingly (or carelessly) submitted false information to United. As such, United's state law claims are like those in *Bank of La.*, which the Fifth Circuit held did not address an area of exclusive federal concern, because they address the veracity of the Labs' representations, not any acts or omissions in United's processing the claims or administering an ERISA plan. Put differently, United's state-law claims are not a coverage dispute in disguise – the Labs do not contend that there is coverage for services that they perform and bill despite knowing that the services are unnecessary. *See Fustok v. UnitedHealth Group, Inc.*, No. 12-CV-787, 2013 WL 2189874, at *5 (S.D. Tex. May 20, 2013) (plan administrator's state law tort claims against provider were not preempted because "[w]hether [the provider's] billing practices 'are tortious does not require interpretation of the Plan'") (quoting *Barker v. The Hartford Life & Acc. Ins. Co.*, No. CIV.A. 3:06–CV–1514P, 2007 WL 2192298 at *4 (N.D. Tex. Jul. 31, 2007)). Courts in this Circuit and around the country have consistently found that claims addressing alleged fraudulent misrepresentations made in the context of ERISA plans do not implicate ERISA preemption.[3]

[3] *See, e.g., Aetna Life Ins. Co. v. Humble Surgical Hosp., LLC,* No. CV H-12-1206, 2016 WL 7496743, at *3 (S.D. Tex. Dec. 31, 2016), *appeal dismissed sub nom.,* No. 17-20123, 2017 WL 3753665 (5th Cir. Apr. 5, 2017) (finding no preemption where insurer brought state-law claims to recoup money it improperly paid because of provider's fraud; "Aetna's claims do not seek to enforce the plans. Aetna wants to recoup the money Humble tricked it into paying for no benefit at all to the patients; the plans are merely the context of Humble's fraud"); *Fustok*, 2013 WL 2189874, at *5 ("though this fraud claim would not exist in the absence of the benefit plan, this Court finds that is too tenuous a connection to warrant ERISA preemption"); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC,* No. CIV.A. DKC 14-2376, 2015 WL 4394408, at *17 (D.Md. July 15, 2015) (refusing to find preemption even though some of the allegations in the complaint referenced ERISA plans because "the core allegations of misconduct" related to "the fraudulent or negligent misrepresentations that the [providers] made to the Cigna entities in order to obtain payments to which they may not have been entitled had they accurately and fully represented the amounts they charged patients"); *Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP,* 128 F. Supp. 3d 501, 517 (D. Conn. 2015) (plan administrator's state law fraud claim not preempted where "[t]he crux" of the claim was the

For the second prong of the conflict-preemption test, "the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of La.,* 468 F.3d at 243. Third-party providers, like the Labs, are not traditional ERISA entities. *See Mem'l Hosp. Sys. V. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990). No part of the ERISA statutory framework regulates the accuracy of information supplied by plan participants or their assignees. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775, n.7 (7th Cir. 2002) (citing 29 U.S.C. §§1021-1031).

The Labs barely address the second prong of the test. They assert that "[t]he administration and interpretation of the ERISA plans directly affects the relationship between the plans and United's members as plan beneficiaries[,]" which is generally true, but United's state-law counterclaims do not seek to administer ERISA plans or interpret ERISA plans' terms. The Labs never attempt to explain how holding third-party providers liable for damages caused by alleged fraudulent misrepresentation or omissions would affect a relationship regulated by ERISA.

The Court should adopt Magistrate Judge Farrar's Recommendation on this issue because

---

provider's alleged fraudulent billing practices"; "[t]he specific terms of the plans are immaterial to resolving the inquiry into the defendants' billing practices and whether the defendants submitted claims reflecting the true amount of their services"); *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program,* No. CIV. 10-3197 RBK/KMW, 2011 WL 2413173, at *9 (D.N.J. Jun. 10, 2011) (ERISA's fundamental concerns not implicated by plan administrator's allegations that defendant fraudulently misrepresented subscribers received treatment, and in reliance on these misrepresentations, the plan paid millions of dollars on these claims; the ERISA plan was "only the context in which [the] garden variety fraud occurred") (quoting *Geller v. Cnty. Line Auto Sales, Inc.,* 86 F.3d 18 (2d Cir. 1996)).

it identifies the applicable legal standards and correctly applies them to United's allegations.

**B. <u>United is not pursuing its state-law claims as an ERISA fiduciary.</u>**

The Labs' second objection regurgitates the sixth argument from their original Motion. In short, they argue that "at all times material to this matter, United is acting as an ERISA fiduciary" and, as such, United lacks standing to bring state law claims and its state law claims are "subject to conflict preemption." [ECF No. 46, p. 5.] This objection is based on a misunderstanding (or mischaracterization) of United's counterclaims.

First, United does not allege that at all times material to this matter it is acting as an ERISA fiduciary. United alleges that *when it is exercising discretion to determine coverage under ERISA plans*, it "is acting as an ERISA claims-review fiduciary," which gives it standing to bring actions for declaratory judgment and injunctive relief under ERISA. [ECF No. 6, ¶¶ 30, 410, 416.]

Second, contrary to the Labs' assertion, and as clearly explained in Magistrate Judge Farrar's Report, United's ERISA claims do not seek damages; they seek declaratory relief concerning the claims that United denied (and for which payment was not issued) and injunctive relief regarding future claim submissions. In contrast, United's state law counterclaims seek to recover damages from the Labs for their violations of Texas common law and statutory duties, which are independent from the terms of any ERISA plan. Accordingly, United is only wearing one "hat" per claim. As noted by Magistrate Judge Farrar, the Fifth Circuit recognizes that "a party may qualify as an ERISA fiduciary with regard to some claims but not others." *Bank of La.*, 468 F.3d at 242.

The Court should adopt Magistrate Judge Farrar's Recommendation on this issue because it identifies the applicable legal standards and correctly applies them to United's allegations.

**C. United sufficiently pleads fraud and negligent misrepresentation.**

The Labs' final objection is that United's fraud and negligent misrepresentation counterclaims fail to satisfy Rule 9(b). The Labs contend that United does not allege "with respect to each Defendant who actually made the alleged fraudulent representations or how it can be determined such representations are, in fact, fraudulent." [ECF No. 46, p. 6.] This argument ignores United's allegations.

United specifically identifies hundreds of fraudulent claims that Labs submitted to it, including the Lab that submitted each claim, the day each claim was submitted to United, and the way that the claim was intended to mislead United and/or the various types of misrepresentations contained therein. [ECF No. 6, ¶¶ 123-252; 314-317; 324-328; 335-339; 345-349; 356-360.] Further, United's pleading contains details describing the overarching mechanics of Labs' fraudulent schemes, such as how Labs induced unnecessary testing requests by paying kickbacks; how Labs disguised the kickbacks; the specific amounts of kickbacks that were made and received; links specific kickbacks to specific fraudulent claims; how Labs inflated the amounts charged per specimen; how Labs drove up the number of specimens that they received for testing; and how Labs attempted to hide the scheme from United and its members. [*Id.*, at ¶¶ 95, 102-103, 194, 208, 210, 214, 264-269, 285-287, 289, 292.]

While United describes with particularity dozens of fraudulent claims *per Lab*, below are a few specific examples for each lab:

- **Hill Country Toxicology:** On September 10, 2013, HCT submitted three claims to United that "misrepresented (or intended to create the false impression) that the services performed were necessary, misrepresented (or intended to create the false impression) that the amount listed was the amount owed by UHC's member, and intentionally omitted that the services were induced by kickbacks to Dr. E.D." [ECF No. 6, at ¶ 128.]

- **Frontier Toxicology:** On March 25, 2014, Frontier submitted four claims to United that "misrepresented (or intended to create the false impression) that the services performed

were necessary, misrepresented (or intended to create the false impression) that the amount listed was the amount owed by UHC's member, and intentionally omitted that the services were induced by kickbacks to Dr. R.B." [*Id.* at ¶ 147.]

- **Sky Toxicology:** On November 3, 2014, Sky submitted six claims to United that "misrepresented, among other things, that Dr. Wright requested the tests and that the tests were medically necessary." [*Id.* at ¶ 190.]
- **Eclipse:** On November 16, 2015, Eclipse submitted three claims to United that "misrepresented (or intended to create the false impression) that the amount charged was the amount actually owed by UHC's member." [*Id.* at ¶ 241.]
- **Axis:** On October 20, 23, and 24, 2014, Axis submitted claims to United that "misrepresented (or intended to create the false impression) that the services performed were necessary, misrepresented (or intended to create the false impression) that the amount listed was the amount owed by UHC's member, misrepresented (or intended to create the false impression) that the services were authorized and/or requested by a medical provider, and intentionally omitted that the services were induced by kickbacks (albeit through kickbacks made through another one of the Labs)." [*Id.* at ¶ 250.]

United's allegations go above and beyond what is required by Rule 9(b) and the Court should adopt Magistrate Judge Farrar's Recommendation on this issue.

## III. CONCLUSION & REQUESTED RELIEF

For the foregoing reasons, the Court should overrule Labs' Objection and adopt Magistrate Judge Farrar's Report and Recommendation.

Respectfully Submitted, this 2nd day of October, 2018.

By: */s/ Stephen W. Mooney*

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**
Stephen W. Mooney
smooney@wwhgd.com
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Telephone: 404-876-2700
Facsimile: 404-875-9433

and

**FIGARI + DAVENPORT, LLP**
Andrew G. Jubinsky
andy.jubinsky@figdav.com
Raymond E. Walker
ray.walker@figdav.com
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

*Attorneys for United*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on the parties listed below on October 2, 2018.

David W. Navarro
David Jed Williams
HORNBERGER FULLER & GARZA INC.
7373 Broadway, Suite 300
San Antonio, Texas 78209
*Attorneys for Labs*

/s/ Stephen W. Mooney
Stephen W. Mooney